The next matter, number 22-1954, Ingeberge v. School Committee of Gloucester et al. At this time, would counsel for the appellant please introduce himself on the record to begin. I'm Mark John Randazza here for the appellant along with my colleagues Jay Marshall-Wollman and Robert Morris. Just make that mic a little closer to you. There you go. And if I could, I'd like to reserve three minutes for rebuttal. You may. Thank you. Go ahead. May it please the court. This is a case about the right of a citizen to publish a lawfully created video. The right to publish lawfully obtained information is clearly established both in the circuit and by the Supreme Court. The Supreme Court in Bartnicki v. Vopper made that clear and this court followed it step-by-step in Jean v. the Massachusetts State Police. The right to establish that even if someone publishes content that they know to be illegally created, Bartnicki and Jean still tell us that its publication remains protected. Now in this case, just like in Okweti v. Molinari, says a public official who threatens to employ coercive state power to stifle protected speech violates the plaintiff's First Amendment rights regardless of what form that coercion takes. And in this case, the record will show you that that coercion was a threat of criminal prosecution under Massachusetts general law section 272 chapter 272 section 99 the Wiretapping Act. Is your contention that on the face of the complaint the only basis given for claiming that the production of it was unlawful is the Wiretapping Act? Yes, although the government did later raise the issue that it also violated FERPA. However, I think that that is easily refuted since my client is not an educational institution that's not subject to FERPA. When you say later? In their arguing papers they did raise that. But aren't we looking at just the face of the complaint for purposes of this case? Yes, but for the sake of completeness. So just so I understand it, the question of whether there's a First Amendment right to produce the document, to produce the video, isn't really necessary as far as you see it for you to win at least at the motion to dismiss stage. No. Because there's just nothing to suggest it was unlawful save for the Wiretapping Act. So if on the face of the Wiretapping Act we can see that wouldn't make it unlawful. Your contention is the claim is this was a lawfully produced thing and therefore there was an impermissible threat to take it down. That is precisely how I would analyze it. Yes, Your Honor. Now getting into that, Mass General Law 272 section 99 clearly only prohibits surreptitious recording. You don't need to have two-party consent, just two-party knowledge. In this case, even if Berger had created it unlawfully, we might have a different situation. But he did not. The three government officials who were at issue in this video, two out of three of them I think perhaps behaved poorly but not unconstitutionally. No one infringed on his First Amendment right to record. The only infringement was on his right to publish. So even though they later retracted the threat, your position is that at the moment it was uttered that gave right to a First Amendment claim? Yes, Judge Thompson, but but I also I think that it is an incomplete viewing of their retraction to say that they retracted the entire threat. They did retract that they would seek criminal liability for his actions. First off, they don't control that. For all we know, they may have already called the district attorney's office and it may be in their hands. They didn't do anything to retract that if they did that. Second, they would not agree to forgo any civil or even extrajudicial extra extra power wise ways to suppress it. So there could be civil claims. Additionally, they can still take government action in order to censor this by going to Facebook and trying to take it down. They specifically would disclaim any agreement to do that. So we still have the threat of government action hanging over us. And that's not speculative at this point. Well, under the doctrine of voluntary cessation, the burden is on them to show that this will not and could not repeat. Only voluntary cessation is only if it's permanent or absolutely clear that the claims could not reasonably be expected to recur as told to us by Friends of the Earth versus Laidlaw. So it's not just speculative, Your Honor. The speculation can be ended by them right at any point, but they have so far declined to end that speculation. Oh, just so I'm clear on this, the letter says we may take legal action, correct? That's the phrase? Yes, it does. And did they say we would not take legal action? They said that they would not take any criminal action. So the letter that says that threatens him says legal action. This one says criminal action. So that still leaves civil and extrajudicial action, which would be very easy to employ. And frankly, there are plenty of cases or a myriad of cases where government actors might act in a manner that they don't really do it under immediate color of power. I'm not sure that the extrajudicial action constitutes legal action. The only threat was legal action. They said they're not going to take criminal action. What is the legal action that there's any non-speculative basis from the letter to think they would take? The only thing they identify is the wiretapping act. Well, the other defendants could take civil action. Well, what's the basis for thinking they would? On your account, there's absolutely no basis for it. It would just be a pure prior restraint. It's a little bit odd to assume they're threatening a prior restraint civilly when there's no indication that they've cited any basis for doing so. I find the whole situation to its genesis to be odd. I mean, it's very clear that it's not criminal either. So will they take some action? I don't know. When we asked them to agree that they would not, they flatly refused. That, to me, says they are reserving the right to do so and when this case is over, perhaps they will. What is it that we're reviewing? A dismissal of the complaint? A denial of an injunction? We have appealed both decisions, Your Honor. And there's a damages component to this? Yes, Your Honor. So, mootness of the injunctive relief aside, you still say the damages claim is live? We do, Your Honor. Okay, and with respect to the damages portion of the claim, what are the damages, given that you didn't take it down? Well, even a momentary. They're at least nominal damages, Your Honor. They are not great damages. We are not seeking multiple-figure damages, but... Nominal damages can be enough for injury in fact in this context? Yes, Your Honor. Do you have authority for that? I do not. I'm not prepared with that, Your Honor. Okay, you might want to be able to provide us with that in a 28-J letter. Thank you, Your Honor. Thank you, counsel. At this time, if counsel for the appellee would please introduce himself on the record to begin. John Davis on behalf of the School Committee of Gloucester, as well as the individual Gloucester defendants. May please the court. The plaintiff took a seven-minute video recording when he was at the superintendent's office on March the 3rd, 2022. We maintain that that recording was not protected by the First Amendment. The plaintiff then posted that video recording on his Facebook page. What's the basis for thinking it was unlawful from the face of the complaint? We're not saying that it was unlawful, Your Honor. We're saying it was not protected by the First Amendment. Well, who cares whether it's protected by the First Amendment? Because the only claim advanced by the plaintiff in this case is that he's seeking recovery under Section 1983 for the defendants depriving him of his First Amendment rights. The First Amendment right is the publication right, not the production right. First, he argues both. The court below said he had withdrawn the right to record. So the publication right stands. He doesn't need to show it was a First Amendment protected production right. You have no First Amendment right to produce it. If it's not unlawful to produce it, then the question is, do you have any governmental right to threaten him with legal action for publishing something? In general, the answer is no. I think the plaintiff raised the letter because they maintain that that goes to the adverse action. The second part of what you have to show in order to recover for a retaliation claim. Take a simple case. You concede he had a lawful right, not because the First Amendment protects it, but a lawful right to record. I'm not arguing. I said take a simple case in which you did concede that. Could you then threaten criminal prosecution for the publication? No, Your Honor. I'm not arguing. So on the face of the complaint, is there anything to suggest it was unlawful to record, Your Honor? But the face of the complaint says, notwithstanding that, there is a basis for thinking you threatened criminal action for publishing it. The plaintiff alleges that because they... On the face of the complaint, it looks to me that we've got a basis for thinking that there was a lawfully produced document recording that you threatened legal action to have taken down. That would be the First Amendment retaliation claim. What's wrong with that claim? The first part of the First Amendment retaliation claim is you have to show that the conduct itself was protected under the First Amendment. Before you even get into... No, you don't. You just have to show it was lawful to have produced it. I think the case law suggests, Your Honor, that his activity, his recording activity, has to be protected by the First Amendment. Why? Because the case... Suppose you had no policy at your school. You had a thing up said, you're allowed to record at our school. The First Amendment may not require you to allow that, but suppose you allowed it. You couldn't then threaten him with criminal prosecution for publishing that recording, could you? And that goes to the second part of the proof, Your Honor. I think that in order to recover for First Amendment retaliation, he's not accusing us of defamation or abusive process or the violation of some state statute. He's accusing us of depriving him of his First Amendment rights. First Amendment right is the publication right. He says both... I would agree, Your Honor, that the recording, his claim for protection of his right to record is gone. The judge below said that that was withdrawn. But then we then get to, well, can he take a recording that is not protected by the First Amendment? If it was lawful to produce it, who cares if the First Amendment protects it? Because I think the court asked us to take a look at the PETA case, which was decided by the First Circuit about a month ago. And in that PETA case, the court said the right to record and the right to publish are linked. And they're absolutely linked. Obviously, if you have a right to record, you have a right to publish what you recorded. But your right to record could come from the fact that it was not unlawful to record, even if the First Amendment doesn't require it to be lawful to record. My argument would be, Your Honor, the one who records something that is not protected by the First Amendment. And that's our premise, that this recording was not protected by the First Amendment. You cannot then publish that... Even if there's no policy, law, statute prohibiting you from doing it? Well, you can publish... It's not illegal to publish it. I'm saying it's not... Your publication of it is not going to be protected by the First Amendment. That just seems... That'd be like... The New York Times publishes a story. There's no... Maybe they don't have a First Amendment right to gather it the way they did. But in the absence of anything saying it was illegal for them to have obtained it that way, they have a First Amendment right to publish it. So what's the difference? Agreed, Your Honor. Because I think that that's the... I mean, isn't that the Pentagon paper case? I'm sorry, Your Honor? Isn't that the Pentagon paper case? Yes, it is, Your Honor. The Supreme Court said that, yeah, as long as it wasn't illegal for them to obtain it, then they have a right to publish it. And, Your Honor, I would maintain that that case is distinguishable from this case because here we have both the recorder and the publisher. He is one and the same. And to say that somebody... His right to record was not protected. I mean, look, taking the PETA case, for example. The gentleman in that case wanted to record the IEP team meeting, and the court said that's not protected. But the court didn't say it was illegal. To suggest that you could then publish it would undermine all the reasons for protecting it. The court didn't say in PETA that it was illegal for him to record it. No, they did not, Your Honor. They said it was activity that was not protected by the First Amendment, and that is our position, that the activity here, Mr. Burge going into the superintendent's office and pulling out his camera and asking to... Well, not asking, but telling people he is videotaping. We are maintaining that that is activity that is not protected. And our position is that if the recorder then publishes it... Suppose the school had said you're allowed to record. Yes. You'd still be able to threaten him with criminal action for then publishing it? I'm not... Just answer that question. No, you could not. Why? We're not maintaining that that was illegal. Why? Because it's not... If we offer... If we invite, if we say, yes, you can, I think it would be. What does that mean to say, if you say, yes, you can, you don't need the First Amendment to protect it because you said, yes, you can. Well, I understand, but you... So the face of the complaint here shows, as far as I can tell, that there was no prohibition on recording that you had set. The PETA case says you don't have to have a written policy. The superintendent said you don't have permission to record here. So is that the basis for it? That was... That's why... For saying it was not permitted. He did not have permission. Correct. He said, he said, I'm going to record the Mrs. Delisi, who's named as a defendant, said, I don't want to be recording, recorded and left the room. And the superintendent came out and said, I'll speak to you about the issue that you want to raise, but you don't have permission to record in the superintendent's office. And he said, well, this is a public place. I want to record. And then the superintendent retreated into his own office. Is that incorporated into the complaint, that part of it? Yes, Your Honor. It is, Your Honor, because the plaintiff cited the seven-minute video and the seven-minute video is part of the record in this case. So we maintain that because of that link, this court said, the first, the right to record and the right to publish are linked. Your intention here is this is a case in which they published something that they were denied permission to record and they had no First Amendment right to supersede that denial. Because this is not clearly First Amendment-protected activity, the recording. Correct. We maintain the key to that is the contention that he was told he could not record. He did not have permission to record. Correct. Correct. And so when someone who records something that is not protected by the First Amendment seeks to publish that material, we would maintain that the same restrictions that this court adopted in PETA, we're talking about recording public officials in public places engaged in their governmental activities. And this court has said that that's narrow. And the PETA court said that that's narrow, that's restricted to recording police officers who are out in public places. And the court has said indisputably public places when they are in full public view. That's not this case. So when Mr. Burge went into that space, we maintain that he was not in a public place per PETA. And like Glick, in the Garrett case, the court said that those are police officers. The individuals in there in the superintendent's office are much more akin to the people that Mr. PETA wanted to video, the school teachers and other school officials who would be attendant at the IEPT meeting. So we maintain that if the recorder seeks to publish, then the same restrictions that would apply to his recording apply to his publication. And that would be, it has to be, and again, we're talking about recording of government officials engaged in their activities in public places. So those restrictions would apply, and it would have to be on a matter of public concern. So the court below said, okay, when she looked at the case law, she agreed that the law on this issue, recording of public officials in public spaces on matters of public concern, that law is not clearly established. And we cited the Glick cases and other cases that talk about police officers and distinguished those saying, no, these aren't police officers. And this isn't the public way. Contesting that there's any basis for thinking the Wire Act applied, are you? I don't know why the letter was sent. We're not arguing that Mr. Burge violated the wiretap statute. That is not our position. I'm sorry? That is not our position. My question was a little bit different. Yes, Your Honor. Are you saying there was any basis for saying the wiretap applied? Any basis? I don't know whether they misread the statute, Your Honor. They got bad advice. I don't know what the rationale was for issuing that letter. You're acknowledging it's clear it does not apply. Yes, Your Honor. What is the significance of a government official baselessly threatening legal action for publishing something? I don't think that the argument is not that it was baseless, Your Honor. It is their argument. Yeah. Their argument is it was baseless because there was only one thing in the letter. The letter said one thing. We're going to take legal action. Here's this criminal statute. So what justifies the government baselessly threatening a criminal action against somebody for publishing something? That's a good question. That's their argument, Your Honor, that that was adverse action. We maintain below that it was de minimis adverse action because Mr. Burge dismissed it. He said, I'm not sheltered by this. And it was withdrawn. And the document withdrawing it says the letter is withdrawn. I get that. And I want to come to that question about whether there was an injury because of the fact that he persisted. I'm asking a slightly separate question, which is we have publication generally is protected. The only thing that the government, at least on the face of the complaint, is alleged to have done is to have baselessly threatened criminal action for the publication. There's no reference in the letter to you didn't have a right to record. It's impermissible to have done that. It just says under the Wiretap Act, you may be guilty. Therefore, we may take legal action. So what justifies the government doing that? The justification is, your honor, that in order to I go back. I'm sorry. I go back to the elements elements. Let me take a different example. Suppose they had said in that letter, if you don't take it down, we'll have you prosecuted for tax fraud. Would that be a First Amendment problem? That would be an adverse action, your honor. And that's one of the elements you have to show. I understand. But would have that been a First Amendment problem? You think the government could have done that? I don't think I think that could be an adverse action. So that but why? Because in the same facts, you're still maintaining he didn't have permission to record. Therefore, he didn't have a First Amendment right to publish. And yet you think the government could say, if you don't take it down, we'll prosecute for tax fraud, your honor. I'm not here to die on the adverse action hill. I maintain that you're not you're not listening to my questions with respect. I'm sorry. What I mean to be getting you to address is in my hypothetical, if the letter had said, if you don't take it down, we'll prosecute you for tax fraud. When there was no basis for thinking she'd committed tax fraud. Would that have been a First Amendment violation? It depends on whether the conduct and I apologize, your honor, but it depends on conduct, same conduct, same case, then all faxes. It would not because of the government on this view and baselessly threaten people. With criminal action for any manner of things. There might be other reasons they can't do that. Abuse of process defamation. There's no First Amendment problem, even even when the threat. Has to do with the publication of information. If it has to do with the publication of information that is not protected by the First Amendment, it's not a First Amendment issue. That's our position, your honor. So so with with the recording was not protected and the publication has to meet the same criteria, including matters of public concern. As the as the publication has to meet the same criteria as the recording itself, because he is one in the same. We maintain that his activity and his recording were not protected by the First Amendment. And therefore, the adverse action, you don't even get to the adverse action issue, your honor. In the last minute, can you just address the adverse action point? I'm sorry, just address the adverse action point since there was despite the. Yes, your honor. Yes, we continue to keep it up. It was he says back. Well, nominal damages. What's your response to that? Yeah, I don't know what he has in way of damages. He said nominal damages. Why isn't that enough? There was a First Amendment violation, at least on his theory. Yes, it could be redressed with nominal damages. Why isn't that enough? I don't know. Well, I guess you could get nominal damages, your honor, for a violation of it, even if you have no harm. Just to try to respond to your question with respect to the demand, your honor, the demand was is at Appendix 016. That's the letter they sent telling him that, you know, take this down. And then the retraction, the withdrawal is 036. And in that letter, they say they are withdrawing the letter. So which the letter is withdrawn and it has the written notice has been revoked. So it's a complete. My brother wants to say that there's still something left. There's something hanging over him. And the court below said there's nothing hanging over him. So the cessation doctrine didn't work. Thank you very much. All right, just to pin down. The counsel said that you are reserving a right to pursue some type of civil action against his client. And in open court today, you're saying that you are reserving the right to do anything that could be slightly construed as retaliation in nature. Yes, I'll make that representation, your honor. We're not reserving our rights to take action against him for what he for his video on that day and his publication of that video on that day. OK, thank you. Thank you, counsel, at this time of counsel for the appellant, would please reintroduce himself on the record. He has a three minute rebuttal. Thank you. This is Mark Randazza on behalf of the appellant Ingeberga. I am somewhat happy to hear my brother now. Finally, during oral argument, agree that they would take no other action that we begged them to give us that representation prior. I still don't think that that moots this case at this point. Well, does it moot your request for a restraining order? If it goes beyond just the district, because so far this retraction has only been on behalf of the district, has not been on behalf of any of the individuals that were being represented in the demand letter, I suppose if you want to call him back up and he can make that representation on behalf of all of the parties. Yeah, that would probably mean that we don't need an injunction anymore. However, they do maintain even now, even in this letter and even during that argument that this publication was not protected by the First Amendment. Mr. Burgess actions on March 3rd, 2022 were not protected by the First Amendment. Mr. Berger, upon getting that upon getting this criminal threat was subject to fear, emotional distress. I mean, imagine being an immigrant to a country. You get a letter from the government saying we're going to prosecute you criminally because you did something that you thought when you emigrated here and took your oath of citizenship that you could do as a God given right. He had to he was chilled. He was immediately chilled. He called counsel. You don't call me if you're not worried. So I don't think it would even be so little as nominal damages, but I'm happy that we agree that even nominal damages would be sufficient. Teague versus Quarterman is is a case from the Fifth Circuit that says even a momentary deprivation of your rights, even it is no de minimis deprivation of your rights. Who's a big man versus Przewski does the same thing for us. Mr. Berger is one of these guys that likes to test the limits of the First Amendment and thank God we have them. Can you just clear up this point of dispute as to whether it is important to your claim or not that we agree with you that it was clearly established that you had a First Amendment right to record? No, we do not. Well. I think it is important that you agree that we had a clearly established right to record. I don't think I think as a matter of constitutional avoidance, you don't need to get to whether it's a First Amendment, right? We're not we don't need to clobber a policy with the First Amendment because there is no policy. Let me just ask this. Suppose because you reference the video. And in the in the complaint. Yes, sir. In the complaint, the video does show that at the time the recording occurred, the person being recorded said you don't have permission to record. So suppose we said that raises a question as to whether it's clear that you even had under Massachusetts law a right to record because you could, in theory, be beyond the scope of your license under state law in doing something on somebody else's property that they hadn't given you license to do. Would you have a First Amendment claim because of the. What then transpired in terms of the threat going to the publication, because I understand the right that you're protecting is the publication, right? Not the recording, right? I don't think that even in that situation, you infect this video so deeply that it's not protected from publication. Remember, the Pentagon Papers case was about stolen state secrets. And I take it, though, in the case is a key to your claim, then that the only ground given for the threat. That was made as to why it had to be taken down was baseless. Yes. If there had been a reasonable basis for thinking that the wiretap applied. Then I take it would be hard to show they don't get qualified immunity. It would be more difficult. Yes. However, I think it is extremely clear, you know, and I understand that perhaps these people didn't want to be videotaped. A lot of people don't want to be videotaped in public places. The Lexus is full of cases that talk about that. But if you are aware that you're being videotaped, Section 99 does not give you any right to stop somebody from videotaping you, nor does it give you somebody, give somebody the right to infringe on your right to publish later. In Massachusetts law that in the event that there had been no permission. Given to record and then there was publication. What legal action is there in Massachusetts law that would entitle you? As the person recorded to have it taken down. I'm sorry, I didn't understand the question, but the person recording wouldn't want to take. I say you don't have permission to record me. You go ahead and you publish it on the Internet. Yes. And I'd like it taken down. Yes. Is there anything under Massachusetts law that I can invoke to have it taken down? Not unless I used it for a commercial advertising purpose. You might have something there, but that's highly hypothetical and outside of these facts. But no, no, it's an unfortunate for our privacy, perhaps that we have to subject ourselves to being recorded in places that people have a right to record. There is no law prohibiting from. Would you bring a damages action for trespass or something like that? If you said that they exceeded the license for the trust for the for the being on the property. I mean, if you came to if I went to your house and you had me sign a form or told me as I came in, don't record here and I did it anyway, you might have a civil action against me for trespass. Yes. Unclear, you'd get to be able to get injunctive relief to have it taken down. I don't believe you would be successful in that. We don't have anything addressing that in the case. No. Thank you. Thank you, Your Honor. Judge Barron, is it take a break? Is it is it possible we could have Mr. Davis indicate whether he's sorry? Yes, yes, that would be a good idea. Although we'd also if you want to submit 28 letters about the nominal damages point and that would be helpful to us. But did you want to just address this last point? Hold on one second. OK, to be clear, my understanding is that a representation on behalf of the individual defendants that they're not going to take any action against Mr. Mr. Berger because of his recording or publication. And I can make that representation. Your counsel for all of them and counsel for all of the defendants. OK, thank you. Thank you. Thank you, counsel. That concludes our case. The court is going to take a brief recess. All right.